

# IN THE
# TENTH COURT OF APPEALS

### Nos. 10-08-00025-CR, 10-08-00027-CR, 10-08-00028-CR, 10-08-00029-CR, and 10-08-00030-CR

**BRIAN LANCASTER,**

                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                        **Appellee**

### From the 272nd District Court
### Brazos County, Texas
### Trial Court Nos. 07-01488-CRF-272, 07-03055-CRF-272, 07-03056-CRF-272, 07-03057-CRF-272, and 07-03058-CRF-272

## O P I N I O N

A jury convicted Brian Lancaster of 100 counts of possession of child pornography in these five cases and assessed his punishment at ten years' imprisonment and a $10,000 fine on each count. Lancaster contends in three points that: (1) the court abused its discretion by refusing to permit him to ask during voir dire whether the jurors could be fair and impartial in a hypothetical case involving sexual

molestation of children; (2) the court erred by ordering the sentences to run consecutively; and (3) the orders cumulating his sentences violate the federal and state constitutional prohibitions against ex post facto laws. We will modify the judgments in trial court cause no. 07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) and affirm the judgments in that case as modified. We will affirm the remaining judgments.

## Voir Dire

During voir dire, Lancaster was questioning the venire members about whether they had been sexually abused or had a close friend or relative who had been. He then proposed to ask, "If, in a hypothetical case—we're not talking about this case—but there's evidence of sexual molestation of young children, could you be fair and impartial in deciding guilt or innocence of a defendant?" The trial court sustained the State's objection to this question and did not permit him to ask it. He rephrased the question to ask whether those venire members who had been sexually abused or knew someone who had been felt "so strongly about the experience you had that you could not be fair and impartial in this case."

Appellant's first point requires us to determine whether this is a proper voir dire question under *Standefer v. State*, 59 S.W.3d 177 (Tex. Crim. App. 2001), and *Barajas v. State*, 93 S.W.3d 36 (Tex. Crim. App. 2002). The State argues that this is an improper commitment question.

In *Standefer*, the Court defined a "commitment question" as one for which "one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the

question." 59 S.W.3d at 180. The Court then provided an example of a question which does not meet this definition.

> Of course, many questions in voir dire are not commitment questions and are not covered by this opinion. For example, the question, "[I]f the victim is a nun, could [the prospective juror] be fair and impartial?" does not ask the prospective juror to resolve or refrain from resolving any issue. A juror could be "fair" and still take into account the victim's status as a nun where that status is logically relevant to the issues at trial or fail to do so if the juror perceived that the victim's status as a nun should not be controlling.

*Id.* (footnote omitted) (quoting *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex. Crim. App. 1991)).

The Court further explained that, "for a commitment question to be proper, one of the possible answers to that question must give rise to a valid challenge for cause." *Id.* at 182.

In *Barajas*, the Court reviewed the propriety of counsel's attempt "to ask venire members if they could be fair and impartial in a case in which the victim was nine years old." 93 S.W.3d at 37. The Court began its analysis by briefly addressing two types of improper voir dire questions: (1) an improper commitment question under *Standefer*; and (2) a "question that is so vague or broad in nature as to constitute a global fishing expedition." *Id.* at 38-39. After examining different reasons counsel may have sought to ask the question at issue, the Court concluded that the question constituted a "global fishing expedition" which the trial court was within its discretion to prevent. *Id.* at 41-42.

One of the potential rationales for the challenged question in *Barajas* was "to determine whether venire members would consider the victim's age during the guilt phase of the trial." *Id.* at 39. The Court stated:

> If a venire member stated that she would resolve the appellant's guilt on the basis of the victim's age, that venire member would be challengeable for cause. But that is not the question that the appellant asked. The trial court may, within its discretion, require that parties phrase questions in a way that is precise enough to glean relevant information from the venire member's answer.

*Id.*

The question propounded by Lancaster was designed to determine whether venire members would determine his guilt for possession of child pornography based on "evidence of sexual molestation of young children." If a venire member responded that he or she would decide Lancaster's guilt on the basis of such evidence, that venire member would be challengeable for cause.[1] *See id.* The question was not too vague or indefinite as to constitute an improper "global fishing expedition." *Cf. id.* at 41-42.

The question was not a commitment question because it did not ask prospective jurors to resolve or refrain from resolving any issue. *See Standefer*, 59 S.W.3d at 180.

Thus, the court abused its discretion by preventing Lancaster from asking the question.[2] This error is of constitutional magnitude, violating the right to be heard

---

[1] As with the victim's status as a 9-year-old in *Barajas*, "sexual molestation of young children" is not a fact of consequence that tends to prove or disprove Lancaster's guilt for possession of child pornography, except that the State had to prove that the images in question depicted a child engaging in sexual conduct. *See* TEX. PEN. CODE ANN. § 43.26(a)(1) (Vernon 2003); *Barajas v. State*, 93 S.W.3d 36, 39 (Tex. Crim. App. 2002).

[2] Relying on Judge Meyers's dissent in *Barajas*, one commentator has observed that "it is now difficult for parties to distinguish between proper and improper commitment questions, because the modified *Standefer* test now requires that commitment questions lie somewhere between fact-specific and

found in article I, section 10 of the Texas Constitution. *See Jones v. State*, 223 S.W.3d 379, 382-83 (Tex. Crim. App. 2007); *see also* TEX. CONST. art. I, § 10.[3] Thus, we must reverse the conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* TEX. R. APP. P. 44.2(a); *Jones v. State*, 264 S.W.3d 26, 28 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). We consider the following in making this determination:

> (1) any testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; (3) the character of the alleged error and how it might be considered in connection with other evidence in the case; (4) the jury instructions; (5) the State's theory and any defensive theories; (6) closing arguments; (7) voir dire; and (8) whether the State emphasized the error.

*Jones*, 264 S.W.3d at 28 (citing *Rich v. State*, 160 S.W.3d 575, 577-78 (Tex. Crim. App. 2005)).

The jury heard evidence regarding more than 20,000 images or video recordings of child pornography recovered from Lancaster's computer. Among these were images and video recordings of him molesting his nieces and two of his former wife's piano students. The State also offered his testimony from a previous trial in which he discussed his exposure to pornography as a child, his sexual experiences as a child, his prior criminal history including an arrest for indecency with a child, his molestation of the nieces and the piano students, and his collection of child pornography.

---

vague. However, the majority in *Barajas* never says, with absolute certainty, where the proper medium lies." Esperanza Guzman, Comment, *Standefer v. State: The Creation of the Criminal Defendant's Diminished Right to a Trial by a Fair and Impartial Jury*, 37 ST. MARY'S L.J. 477, 507-08 (2006). The question at issue in this case appears situated "where the proper medium lies." *See id.*

[3]      Article I, section 10 provides in pertinent part, "In all criminal prosecutions the accused . . . shall have the right of being heard by himself or counsel, or both." TEX. CONST. art. I, § 10.

The record contains overwhelming evidence supporting the guilty verdicts. *See Wall v. State*, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006) (the existence of overwhelming evidence "may be an important factor in the evaluation of harm"). It is undisputed that the images of child pornography were recovered from Lancaster's computer. Lancaster himself admitted to possessing these images in his previous trial. He does not challenge the sufficiency of the evidence to support his convictions.

To the extent the evidence of Lancaster molesting these girls constitutes an extraneous offense, the court instructed the jury in the guilt-innocence charge that jurors could consider extraneous-offense evidence only if they found beyond a reasonable doubt that Lancaster had committed the extraneous acts and only for the purpose of showing his "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any."

During closing argument both sides referred to at least one incident of molestation, arguing in particular about whether it constituted a "lewd exhibition of the genitals," a form of sexual conduct. *See* TEX. PEN. CODE ANN. § 43.25(a)(2) (Vernon Supp. 2009).

Especially in light of the overwhelming evidence of Lancaster's guilt and his admission at the previous trial that he possessed child pornography as alleged, we are convinced beyond a reasonable doubt that the error did not contribute to his conviction. *See* TEX. R. APP. P. 44.2(a); *Jones*, 264 S.W.3d at 28-30. Thus, we overrule his first point.

## Cumulation of Sentences

Lancaster contends in his second point that the court erred by ordering the sentences to run consecutively because a prior version of section 3.03 of the Penal Code applies and requires that his sentences be served concurrently.

The issue is whether section 3.03(b)(3)(A) of the Penal Code, enacted by the 79th Legislature to take effect on September 1, 2005, applies. Section 3.03(b)(3)(A) provides:

> (b)    If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of:
>
> . . . .
>
> (3) an offense:
>
>    (A) under Section 21.15 or 43.26, regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of both sections.

TEX. PEN. CODE ANN. § 3.03(b)(3)(A) (Vernon Supp. 2009). Under prior law, if a defendant were convicted in a single trial of multiple charges of possession or promotion of child pornography, then the sentences would have to run concurrently. *See id.* § 3.03(a) (Vernon Supp. 2009).[4]

The savings clause for the 2005 legislation provides as follows:

---

[4]    Section 3.03(a) provides:

> When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a sentence for each offense for which he has been found guilty shall be pronounced. Except as provided by Subsection (b), the sentences shall run concurrently.

Section 3.03(a) has remained unchanged since 1995. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 596, § 1, 1995 Tex. Gen. Laws 597, 597 (current version at TEX. PEN. CODE ANN. § 3.03(a) (Vernon Supp. 2009)).

The change in law made by this Act applies only to an offense committed on or after September 1, 2005. An offense committed before September 1, 2005, is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. For the purposes of this section, an offense was committed before September 1, 2005, if any element of the offense was committed before that date.

Act of May 23, 2005, 79th Leg., R.S., ch. 527, § 3, 2005 Tex. Gen. Laws 1429, 1430.

Lancaster contends that the former law applies because the evidence establishes that his conviction for possession of child pornography under count 17 in trial court cause no. 07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) is based on a video recording he acquired in 2004, before the 2005 amendment took effect. The State responds that the current statute applies because Lancaster maintained possession of the video recording in question after the amended version of the statute took effect.

Lancaster acquired the video recording on March 4, 2004 and deleted it on May 5, 2004. Despite this "deletion," the video recording remained on his computer in unallocated file space and was still there in January 2007 when the computer was seized pursuant to a search warrant. *See* Ty E. Howard, *Don't Cache Out Your Case: Prosecuting Child Pornography Laws Based on Images Located in Temporary Internet Files*, 19 BERKELEY TECH. L.J. 1227, 1234 n.22 (2004).[5] Lancaster's attempted deletion did not dispossess

---

[5]     When a computer user deletes a file, it is not simultaneously removed from her computer. The physical location on the hard disk where the deleted file resides is marked by the computer as unallocated file space, which allows it to be overwritten. The file is not actually removed from the computer until another file overwrites it. While the file is marked for deletion (but not yet overwritten), it exists in unallocated file space. Forensic software allows an investigator to search and view the contents of the unallocated file space.

Ty E. Howard, *Don't Cache Out Your Case: Prosecuting Child Pornography Laws Based on Images Located in Temporary Internet Files*, 19 BERKELEY TECH. L.J. 1227, 1234 n.22 (2004).

him of the recording.  *Id.* at 1254-55 ("the possession of the image begins when the image is cached and ends when the file is deleted and overwritten by other data").[6]

"[T]he Legislature intended in cases like this to make possession of each item of child pornography an 'allowable unit of prosecution.'"  *Vineyard v. State*, 958 S.W.2d 834, 838 (Tex. Crim. App. 1998); *see Witt v. State*, 237 S.W.3d 394, 397 (Tex. App.—Waco 2007, pet. ref'd); *Roise v. State*, 7 S.W.3d 225, 232 (Tex. App.—Austin 1999, pet. ref'd).[7] Thus, Lancaster's maintaining of possession of the video recording from March 2004 until January 2007 was a single prosecutable offense.  *Id.*  He could not be prosecuted separately for each day, week, month or year he maintained possession of the recording.

The savings clause unambiguously provides that the former statute applies if *any* element of the offense was committed before September 1, 2005.  *See Dickens v. State*, 981 S.W.2d 186, 188 (Tex. Crim. App. 1998) (addressing similar savings clause).  Lancaster acquired the video recording in March 2004, more than a year before the 2005 amendments to section 3.03 took effect.  In fact, *every* element of the offense was

---

[6]     "Significantly, the time period of possession does not end when a user deletes the image because the image is only marked for deletion—it still physically exists on the computer, albeit in a different format."  *Id.* at 1255 n.157.

[7]     The "allowable unit of prosecution" is a double jeopardy concept.  *See Ex parte Hawkins*, 6 S.W.3d 554, 556-57 (Tex. Crim. App. 1999).

> The Double Jeopardy Clause is offended if a defendant is successively prosecuted for the same offense. The legislature defines whether offenses are the same. It does so by prescribing the "allowable unit of prosecution," which is "a distinguishable discrete act that is a separate violation of the statute."

*Id.* at 556 (quoting *Sanabria v. United States*, 437 U.S. 54, 69-70 & n.24, 98 S. Ct. 2170, 2181-82 & n.24, 57 L. Ed. 2d 43 (1978)).

committed before September 1, 2005, and thus the former statute applies. *See Williams v. State*, 71 S.W.3d 862, 864 (Tex. App.—Texarkana 2002), *rev'd on other grounds*, 114 S.W.3d 920 (Tex. Crim. App. 2003); *Harvill v. State*, 13 S.W.3d 478, 481 (Tex. App.—Corpus Christi 2000, no pet.).[8] Therefore, the court erred by ordering Lancaster's sentence under count 17 in trial court cause no. 07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) to run consecutively.

The proper remedy for such error is to modify the judgment to delete the unlawful cumulation order. *Beedy v. State*, 250 S.W.3d 107, 113-14 (Tex. Crim. App. 2008). In applying this remedy, Lancaster further argues that, because the prior version of section 3.03(b) applies to count 17, it necessarily applies to all counts for which he was convicted. We disagree.

Lancaster first refers to section 3.03 and to the savings clause and observes that both speak with reference to an "offense" as opposed to "offenses." We initially note that, assuming for the moment that he was not charged with or convicted of count 17, Lancaster does not dispute that the current version of section 3.03 would otherwise apply. Section 3.03(b) permits consecutive sentences if "each sentence is for a

---

[8]     The defendants in *Williams* and *Harvill* were convicted of criminal non-support based on their failure to pay child support both before and after the penalty for the offense was changed. *See Williams v. State*, 71 S.W.3d 862, 864 (Tex. App.—Texarkana 2002), *rev'd on other grounds*, 114 S.W.3d 920 (Tex. Crim. App. 2003); *Harvill v. State*, 13 S.W.3d 478, 481 (Tex. App.—Corpus Christi 2000, no pet.). The trial court in both instances applied the new punishment range. *See Williams*, 71 S.W.3d at 864; *Harvill*, 13 S.W.3d at 482. Both intermediate courts of appeal found this to be error because an element of the offense in each instance had occurred before the effective date of the statutory amendment. *See Williams*, 71 S.W.3d at 864-65; *Harvill*, 13 S.W.3d at 481-82. The Court of Criminal Appeals reversed in *Williams* because the defendant had stipulated that his offense occurred after the amendment took effect. *See Williams v. State*, 114 S.W.3d 920, 921-22 (Tex. Crim. App. 2003).

conviction of [an offense under section 43.26]." TEX. PEN. CODE ANN. § 3.03(b)(3)(A). As

the Texarkana Court has explained:

> The statute does not reflect that the Legislature intended to prevent the
> State from seeking to have sentences running consecutively if they fell
> within subsection (b) of the act even if other charges arising from the same
> criminal episode were also prosecuted as a part of the single criminal
> action. The purpose of subsection (b) is to allow sentences to run
> concurrently or consecutively for the types of crimes specifically set out
> without changing the rule for other crimes that are part of the criminal
> episode but do not fall within these categories.

*Kuhn v. State*, 45 S.W.3d 207, 209-10 (Tex. App.—Texarkana 2001, pet. ref'd).

There is nothing that prohibits the State from prosecuting in a single trial

offenses arising out of the same criminal episode even if some of the offenses were

committed under one version of the law and others were committed under a different

version.

Our research has disclosed several cases in which an appellate court approved

judgments requiring some, but not all, of a defendant's sentences to run consecutively

where the law permitted cumulation of sentence for only some of the offenses for which

the defendant was tried. *See Yvanez v. State*, 991 S.W.2d 280, 282-83 (Tex. Crim. App.

1999); *Garza v. State*, 687 S.W.2d 325, 329-30 (Tex. Crim. App. 1985); *DeLeon v. State*, 294

S.W.3d 742, 746-48 (Tex. App.—Amarillo 2009, pet. ref'd); *Kuhn*, 45 S.W.3d at 209-10.

Therefore, we will modify the judgment to reflect that Lancaster's sentence under

count 17 does not run consecutively but his other sentences do.[9]  We sustain Lancaster's second point in part.

In light of our disposition of Lancaster's second issue, we need not address his third point which complains of an ex post facto violation.[10]  *See* TEX. R. APP. P. 47.1.

We modify the judgments in trial court cause no. 07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) by deleting the unlawful cumulation order in count 17 and modifying the cumulation order in count 18, and we affirm those judgments as modified.  We affirm the remaining judgments.


          FELIPE REYNA
          Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray concurring and dissenting with note)*
Affirmed as modified
Opinion delivered and filed May 26, 2010
Publish
[CRPM]

---

[9]     The trial court entered a separate judgment for each of the 100 counts for which Lancaster was convicted.  The court ordered his 20 sentences in trial court cause no. 07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) to run sequentially.  Thus, his sentence under count 17 was to begin to run after his sentence under count 16 had ceased to operate.  Accordingly, we will modify these judgments by: (1) deleting the cumulation order for count 17 so that the sentence under count 17 commences on the date of imposition of sentence, December 13, 2007; and (2) modifying the cumulation order for count 18 so that the sentence under count 18 begins to run after the sentence under count 16 ceases to operate.

[10]     Lancaster generally contends in his third point that the application of the current version of section 3.03(b) to offenses committed before September 1, 2005 constitutes the imposition of an ex post facto law.  Although he implies that many of the offenses for which he was convicted occurred before this date, the only offense that he specifically identifies as having occurred before this date is the one under count 17.

\*      (Chief Justice Gray would affirm the trial court's judgments without modification.  He does not join any part of the opinion and concurs in the judgment except to the extent that it reduces the sentence by running some concurrent with others, noting that all elements of the offense occurred after the date the statute was modified to allow stacking of the sentences and the date of acquisition is not an element of the offense.  A separate opinion will not issue.)