IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00203-CV

 

Ron Braneff,

                                                                                    Appellant

 v.

 

Ann Troutmen,

                                                                                    Appellee

 

 



From the 82nd District Court

Robertson County, Texas

Trial Court No. 06-02-17447-CV

 



CONCURRING Opinion










 

            If I were writing on a clean slate, I would
affirm the trial court’s determination.  Specifically, I would find that
probable cause existed for Troutman to report the evidence in her possession to
the appropriate authorities.  This is made more clear when you consider that
Troutman is an attorney and is, presumably, more likely to be aware that
forgery is not limited to signing someone else’s signature, but can also be the
use of a document, passing, by a person who knows the signature is not
authentic or uses a document for an unauthorized purpose.  See Tex. Penal Code Ann. § 32.21 (Vernon Pamp. 2010).

            But I do not write on a clean slate. 
Based on my review of the case authority, I believe the elements of probable
cause and malice have become largely redundant in a case with facts such as those
before us.  If we cannot clearly separate the element of probable cause from
malice, in a case like this where there seems to be an abundance of evidence of
ill will between the parties, it will be impossible to not have some evidence
of the lack of probable cause; but it is the same as the evidence of malice.

            I would separate these elements by
making the lack of probable cause element be an objective test:  Would a
reasonable person, essentially a magistrate, who knew the facts known to the
complainant, have probable cause to believe that a crime had been committed? 
If we apply the same test in civil cases as we do in criminal cases to the
question of probable cause, the actor’s subjective motives are not considered
in determining probable cause.  See Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).  After all, in the
civil context of malicious prosecution, there is a separate element to consider
that; the malice element.

            Thus, I would join the three justice
on the Texas Supreme Court who have stated

A re-examination of our holding that lack of
probable cause will support an inference of malice without further examination
of the evidence may well be in order.

 

Kroger v. Suberu, 216 S.W.3d 788, 798 (Tex. 2006) (Justice Johnson dissenting, joined
by Justices Medina and Wainwright).

            This case presents the inverse of Kroger’s
inference of malice.  It is the ability to show malice from which an inference
of the lack of probable cause is being drawn.  As indicated, I would clearly
separate the two with objective and subjective analysis, respectively.  Without
such a separation, we risk keeping a person who has a history of a bad
relationship with another person from reporting an actual crime due to the fear
of being sued for malicious prosecution if the person is acquitted – as
distinguished from being innocent.  See Kroger at 792 fn 2.  But also,
as indicated, I do not write on a clean slate and, accordingly, concur in the
Court’s opinion and judgment.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Concurring
opinion delivered and filed November 17, 2010






 could be “fair” and still take into
account the victim's status as a nun where that status is logically relevant to
the issues at trial or fail to do so if the juror perceived that the victim's
status as a nun should not be controlling.

 

Id. (footnote omitted) (quoting Nunfio v. State, 808
S.W.2d 482, 484 (Tex. Crim. App. 1991)).

            The Court further explained
that, “for a commitment question to be proper, one of the possible answers to
that question must give rise to a valid challenge for cause.”  Id. at 182.

            In Barajas, the Court
reviewed the propriety of counsel’s attempt “to ask venire members if they
could be fair and impartial in a case in which the victim was nine years old.” 
93 S.W.3d at 37.  The Court began its analysis by briefly addressing two types
of improper voir dire questions: (1) an improper commitment question under Standefer;
and (2) a “question that is so vague or broad in nature as to constitute a
global fishing expedition.”  Id. at 38-39.  After examining different
reasons counsel may have sought to ask the question at issue, the Court
concluded that the question constituted a “global fishing expedition” which the
trial court was within its discretion to prevent.  Id. at 41-42.

            One of the potential
rationales for the challenged question in Barajas was “to determine
whether venire members would consider the victim’s age during the guilt phase
of the trial.”  Id. at 39.  The Court stated:

If a venire member stated that she would
resolve the appellant’s guilt on the basis of the victim’s age, that venire
member would be challengeable for cause.  But that is not the question that the
appellant asked.  The trial court may, within its discretion, require that
parties phrase questions in a way that is precise enough to glean relevant
information from the venire member’s answer.

 

Id.

            The question propounded by
Lancaster was designed to determine whether venire members would determine his
guilt for possession of child pornography based on “evidence of sexual molestation of young
children.”  If a venire member responded that he or she would decide
Lancaster’s guilt on the basis of such evidence, that venire member would be
challengeable for cause.[1] 
See id.  The question was not too vague or indefinite
as to constitute an improper “global fishing expedition.”  Cf. id. at
41-42.

            The question was not a commitment
question because it did not ask prospective jurors to resolve or refrain from resolving any
issue.  See Standefer, 59 S.W.3d at 180.

            Thus, the court abused its
discretion by preventing Lancaster from asking the question.[2] 
This error is of constitutional magnitude, violating the right to be heard
found in article I, section 10 of the Texas Constitution.  See Jones
v. State, 223 S.W.3d 379, 382-83 (Tex. Crim. App. 2007); see also Tex. Const. art. I, § 10.[3] 
Thus, we must reverse the conviction unless we determine beyond a reasonable
doubt that the error did not contribute to the conviction.  See Tex. R. App. P. 44.2(a); Jones v.
State, 264 S.W.3d 26, 28 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d). 
We consider the following in making this determination:

(1) any testimony or physical evidence
admitted for the jury’s consideration; (2) the nature of the evidence
supporting the verdict; (3) the character of the alleged error and how it might
be considered in connection with other evidence in the case; (4) the jury
instructions; (5) the State’s theory and any defensive theories; (6) closing
arguments; (7) voir dire; and (8) whether the State emphasized the error.

 

Jones, 264 S.W.3d at 28 (citing Rich v. State, 160 S.W.3d
575, 577-78 (Tex. Crim. App. 2005)).

            The jury heard evidence
regarding more than 20,000 images or video recordings of child pornography
recovered from Lancaster’s computer.  Among these were images and video
recordings of him molesting his nieces and two of his former wife’s piano
students.  The State also offered his testimony from a previous trial in which
he discussed his exposure to pornography as a child, his sexual experiences as
a child, his prior criminal history including an arrest for indecency with a
child, his molestation of the nieces and the piano students, and his collection
of child pornography.

            The record contains
overwhelming evidence supporting the guilty verdicts.  See Wall v.
State, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006) (the existence of
overwhelming evidence “may be an important factor in the evaluation of harm”). 
It is undisputed that the images of child pornography were recovered from
Lancaster’s computer.  Lancaster himself admitted to possessing these images in
his previous trial.  He does not challenge the sufficiency of the evidence to
support his convictions.

            To the extent the evidence
of Lancaster molesting these girls constitutes an extraneous offense, the court
instructed the jury in the guilt-innocence charge that jurors could consider
extraneous-offense evidence only if they found beyond a reasonable doubt that
Lancaster had committed the extraneous acts and only for the purpose of showing
his “motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident, if any.”

            During closing argument both
sides referred to at least one incident of molestation, arguing in particular
about whether it constituted a “lewd exhibition of the genitals,” a form of
sexual conduct.  See Tex. Pen.
Code Ann. § 43.25(a)(2) (Vernon Supp. 2009).

            Especially in light of the
overwhelming evidence of Lancaster’s guilt and his admission at the previous
trial that he possessed child pornography as alleged, we are convinced beyond a
reasonable doubt that the error did not contribute to his conviction.  See
Tex. R. App. P. 44.2(a); Jones,
264 S.W.3d at 28-30.  Thus, we overrule his first point.

 

 

Cumulation of Sentences

            Lancaster contends in his
second point that the court erred by ordering the sentences to run
consecutively because a prior version of section 3.03 of the Penal Code applies
and requires that his sentences be served concurrently.

            The issue is whether section
3.03(b)(3)(A) of the Penal Code, enacted by the 79th Legislature to take effect
on September 1, 2005, applies.  Section 3.03(b)(3)(A) provides:

(b)       If the accused is found guilty
of more than one offense arising out of the same criminal episode, the
sentences may run concurrently or consecutively if each sentence is for a
conviction of:

 

.  .  .  .

 

(3) an offense: 

 

      (A) under Section 21.15 or 43.26,
regardless of whether the accused is convicted of violations of the same
section more than once or is convicted of violations of both sections.

  

Tex. Pen. Code
Ann. § 3.03(b)(3)(A)
(Vernon Supp. 2009).  Under prior law, if a defendant were convicted in a
single trial of multiple charges of possession or promotion of child
pornography, then the sentences would have to run concurrently.  See id. § 3.03(a) (Vernon Supp. 2009).[4]

            The savings clause for the
2005 legislation provides as follows:

            The change in law made by
this Act applies only to an offense committed on or after September 1, 2005. 
An offense committed before September 1, 2005, is covered by the law in effect
when the offense was committed, and the former law is continued in effect for
that purpose.  For the purposes of this section, an offense was committed
before September 1, 2005, if any element of the offense was committed before
that date.

 

Act of May 23, 2005, 79th Leg., R.S.,
ch. 527, § 3, 2005 Tex. Gen. Laws 1429, 1430.

            Lancaster contends that the
former law applies because the evidence establishes that his conviction for
possession of child pornography under count 17 in trial court cause no.
07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) is based on a video
recording he acquired in 2004, before the 2005 amendment took effect.  The
State responds that the current statute applies because Lancaster maintained
possession of the video recording in question after the amended version of the
statute took effect.

            Lancaster acquired the video
recording on March 4, 2004 and deleted it on May 5, 2004.  Despite this
“deletion,” the video recording remained on his computer in unallocated file
space and was still there in January 2007 when the computer was seized pursuant
to a search warrant.  See Ty E. Howard, Don’t Cache Out Your Case:
Prosecuting Child Pornography Laws Based on Images Located in Temporary Internet
Files, 19 Berkeley Tech. L.J.
1227, 1234 n.22 (2004).[5] 
Lancaster’s attempted deletion did not dispossess him of the recording.  Id. at 1254-55 (“the possession of the image begins when the
image is cached and ends when the file is deleted and overwritten by other data”).[6]

            “[T]he Legislature intended
in cases like this to make possession of each item of child pornography an
‘allowable unit of prosecution.’”  Vineyard v. State, 958 S.W.2d 834,
838 (Tex. Crim. App. 1998); see Witt v. State, 237 S.W.3d 394, 397 (Tex.
App.—Waco 2007, pet. ref’d); Roise v. State, 7 S.W.3d 225, 232 (Tex.
App.—Austin 1999, pet. ref’d).[7] 
Thus, Lancaster’s maintaining of possession of the video recording from March
2004 until January 2007 was a single prosecutable offense.  Id.  He could not be prosecuted separately for each day, week,
month or year he maintained possession of the recording.

            The savings clause
unambiguously provides that the former statute applies if any element of
the offense was committed before September 1, 2005.  See Dickens v. State,
981 S.W.2d 186, 188 (Tex. Crim. App. 1998) (addressing similar savings
clause).  Lancaster acquired the video recording in March 2004, more than a
year before the 2005 amendments to section 3.03 took effect.  In fact, every
element of the offense was committed before September 1, 2005, and thus the
former statute applies.  See Williams v. State, 71 S.W.3d 862,
864 (Tex. App.—Texarkana 2002), rev’d on other grounds, 114 S.W.3d 920
(Tex. Crim. App. 2003); Harvill v. State, 13 S.W.3d 478, 481 (Tex. App.—Corpus Christi 2000, no pet.).[8] 
Therefore, the court erred by ordering Lancaster’s sentence under count 17 in
trial court cause no. 07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) to
run consecutively.

            The proper remedy for such
error is to modify the judgment to delete the unlawful cumulation order.  Beedy
v. State, 250 S.W.3d 107, 113-14 (Tex. Crim. App. 2008).  In applying this
remedy, Lancaster further argues that, because the prior version of section
3.03(b) applies to count 17, it necessarily applies to all counts for which he
was convicted.  We disagree.

            Lancaster first refers to
section 3.03 and to the savings clause and observes that both speak with
reference to an “offense” as opposed to “offenses.”  We initially note that,
assuming for the moment that he was not charged with or convicted of count 17,
Lancaster does not dispute that the current version of section 3.03 would
otherwise apply.  Section 3.03(b) permits consecutive sentences if “each
sentence is for a conviction of [an offense under section 43.26].”  Tex. Pen. Code Ann. § 3.03(b)(3)(A). 
As the Texarkana Court has explained:

The statute does not reflect that the
Legislature intended to prevent the State from seeking to have sentences
running consecutively if they fell within subsection (b) of the act even if
other charges arising from the same criminal episode were also prosecuted as a
part of the single criminal action.  The purpose of subsection (b) is to allow
sentences to run concurrently or consecutively for the types of crimes
specifically set out without changing the rule for other crimes that are part
of the criminal episode but do not fall within these categories.

 

Kuhn v. State, 45 S.W.3d 207, 209-10 (Tex.
App.—Texarkana 2001, pet. ref’d).

            There is nothing that
prohibits the State from prosecuting in a single trial offenses arising out of
the same criminal episode even if some of the offenses were committed under one
version of the law and others were committed under a different version.

            Our research has disclosed several
cases in which an appellate court approved judgments requiring some, but not
all, of a defendant’s sentences to run consecutively where the law permitted
cumulation of sentence for only some of the offenses for which the defendant
was tried.  See Yvanez v. State, 991 S.W.2d 280, 282-83 (Tex.
Crim. App. 1999); Garza v. State, 687 S.W.2d 325, 329-30 (Tex. Crim.
App. 1985); DeLeon v. State, 294 S.W.3d 742, 746-48 (Tex. App.—Amarillo 2009, pet. ref’d); Kuhn, 45 S.W.3d at
209-10.        Therefore, we will modify the judgment to reflect that
Lancaster’s sentence under count 17 does not run consecutively but his other
sentences do.[9] 
We sustain Lancaster’s second point in part.

            In light of our disposition
of Lancaster’s second issue, we need not address his third point which
complains of an ex post facto violation.[10] 
See Tex. R. App. P. 47.1.

We modify the judgments in trial court
cause no. 07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) by deleting the
unlawful cumulation order in count 17 and modifying the cumulation order in count
18, and we affirm those judgments as modified.  We affirm the remaining
judgments.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray concurring and dissenting with note)*

Affirmed as
modified

Opinion
delivered and filed May 26, 2010

Publish

[CRPM]

 




*           (Chief
Justice Gray would affirm the trial court’s judgments without modification.  He
does not join any part of the opinion and concurs in the judgment except to the
extent that it reduces the sentence by running some concurrent with others,
noting that all elements of the offense occurred after the date the statute was
modified to allow stacking of the sentences and the date of acquisition is not
an element of the offense.  A separate opinion will not issue.)

 









[1]
              As with the victim’s
status as a 9-year-old in Barajas, “sexual molestation of young
children” is not a fact of consequence that tends to prove or disprove
Lancaster’s guilt for possession of child pornography, except that the State
had to prove that the images in question depicted a child engaging in sexual
conduct.  See Tex. Pen. Code Ann.
§ 43.26(a)(1) (Vernon 2003); Barajas v. State, 93 S.W.3d 36, 39 (Tex. Crim. App. 2002).

 





[2]
              Relying on Judge
Meyers’s dissent in Barajas, one commentator has observed that “it is
now difficult for parties to distinguish between proper and improper commitment
questions, because the modified Standefer test now requires that
commitment questions lie somewhere between fact-specific and vague.  However,
the majority in Barajas never says, with absolute certainty, where the
proper medium lies.”  Esperanza Guzman, Comment, Standefer v. State: The
Creation of the Criminal Defendant’s Diminished Right to a Trial by a Fair and Impartial
Jury, 37 St. Mary’s L.J. 477,
507-08 (2006).  The question at issue in this case appears situated “where the
proper medium lies.”  See id.

 





[3]
              Article I, section
10 provides in pertinent part, “In all criminal prosecutions the accused . . .
shall have the right of being heard by himself or counsel, or both.”  Tex. Const. art. I, § 10.





[4]
              Section 3.03(a) provides:

 

                When the accused is
found guilty of more than one offense arising out of the same criminal episode
prosecuted in a single criminal action, a sentence for each offense for which
he has been found guilty shall be pronounced.  Except as provided by Subsection
(b), the sentences shall run concurrently.

 

Section 3.03(a) has remained unchanged since 1995.  See
Act of May 26, 1995, 74th Leg., R.S., ch. 596, § 1, 1995 Tex. Gen. Laws 597,
597 (current version at Tex. Pen. Code
Ann. § 3.03(a) (Vernon Supp. 2009)).





[5]
                              When
a computer user deletes a file, it is not simultaneously removed from her
computer.  The physical location on the hard disk where the deleted file
resides is marked by the computer as unallocated file space, which allows it to
be overwritten.  The file is not actually removed from the computer until
another file overwrites it.  While the file is marked for deletion (but not yet
overwritten), it exists in unallocated file space.  Forensic software allows an
investigator to search and view the contents of the unallocated file space.

 

Ty E. Howard, Don’t Cache Out Your
Case: Prosecuting Child Pornography Laws Based on Images Located in Temporary
Internet Files, 19 Berkeley Tech.
L.J. 1227, 1234 n.22 (2004).

 





[6]
              “Significantly, the
time period of possession does not end when a user deletes the image because
the image is only marked for deletion—it still physically exists on the
computer, albeit in a different format.”  Id.
at 1255 n.157.

 





[7]
              The “allowable unit
of prosecution” is a double jeopardy concept.  See Ex parte Hawkins,
6 S.W.3d 554, 556-57 (Tex. Crim. App. 1999).

 

The Double Jeopardy Clause is offended
if a defendant is successively prosecuted for the same offense. The legislature
defines whether offenses are the same. It does so by prescribing the “allowable
unit of prosecution,” which is “a distinguishable discrete act that is a
separate violation of the statute.”

 

Id.
at 556 (quoting Sanabria v. United States, 437 U.S. 54, 69-70 &
n.24, 98 S. Ct. 2170, 2181-82 & n.24, 57 L. Ed. 2d 43 (1978)).

 





[8]
              The defendants in Williams
and Harvill were convicted of criminal non-support based on their
failure to pay child support both before and after the penalty for the offense
was changed.  See Williams v. State, 71 S.W.3d 862, 864 (Tex.
App.—Texarkana 2002), rev’d on other grounds, 114 S.W.3d 920 (Tex. Crim.
App. 2003); Harvill v. State, 13 S.W.3d 478, 481 (Tex. App.—Corpus Christi 2000, no pet.).  The trial court in both
instances applied the new punishment range.  See Williams, 71
S.W.3d at 864; Harvill, 13 S.W.3d at 482.  Both intermediate courts of
appeal found this to be error because an element of the offense in each
instance had occurred before the effective date of the statutory amendment.  See
Williams, 71 S.W.3d at 864-65; Harvill, 13 S.W.3d at 481-82.  The
Court of Criminal Appeals reversed in Williams because the defendant had
stipulated that his offense occurred after the amendment took effect.  See
Williams v. State, 114 S.W.3d 920, 921-22 (Tex. Crim. App. 2003).





[9]
              The trial court
entered a separate judgment for each of the 100 counts for which Lancaster was
convicted.  The court ordered his 20 sentences in trial court cause no.
07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) to run sequentially. 
Thus, his sentence under count 17 was to begin to run after his sentence under count
16 had ceased to operate.  Accordingly, we will modify these judgments by: (1) 
deleting the cumulation order for count 17 so that the sentence under count 17
commences on the date of imposition of sentence, December 13, 2007; and (2)
modifying the cumulation order for count 18 so that the sentence under count 18
begins to run after the sentence under count 16 ceases to operate.

 





[10]
            Lancaster generally
contends in his third point that the application of the current version of
section 3.03(b) to offenses committed before September 1, 2005 constitutes the
imposition of an ex post facto law.  Although he implies that many of the
offenses for which he was convicted occurred before this date, the only offense
that he specifically identifies as having occurred before this date is the one
under count 17.